UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff,

  and

SEAN REILLY,

      Plaintiff-Intervenor,

      v.

COTTONWOOD FINANCIAL
WASHINGTON, LLC, and COTTONWOOD
FINANCIAL, LTD.,

      Defendants.

NO.   CV-09-5073-EFS

**ORDER GRANTING AND DENYING IN
PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

A hearing occurred in the above-captioned matter on December 9, 2010.  Plaintiff Equal Employment Opportunity Commission (EEOC) was represented by Damien Lee and Jamal Whitehead; Plaintiff Sean Reilly was represented by Keller Allen.   Brian Keeley and Angelina LaPenotiere appeared on behalf of Defendants Cottonwood Financial Washington, LLC and Cottonwood Financial, Ltd.'s ("Defendants") behalf.   Before the Court was Defendants' Motion for Summary Judgment (ECF No. 82).   After reviewing the submitted material and applicable authority and hearing from counsel, the Court is fully informed.   For the reasons given below,

ORDER - 1

the Court grants and denies in part the motion:  Plaintiffs' ADA and WLAD wrongful-termination discrimination claims, WLAD failure-to-accommodate discrimination claim, and federal and state retaliation claims survive summary judgment, while the remaining claims do not.

**A.   Facts**[1]

Defendants operate the "Cash Store," which provides short-term payday loans to customers who leave a postdated check with the Cash Store in exchange for a temporary loan.  Cash Store District Manager (DM) Dawn Rice hired Mr. Reilly, who was then twenty-six years old, as Assistant Store Manager of the Cash Store in Walla Walla on June 22, 2006.  Although she was not located at the Walla Walla store, DM Rice supervised Mr. Reilly.   DM Rice in turn was supervised by Desiree Schwartz, who was a Regional Manager (RM).  DM Schwartz was supervised by Melissa Park Tran, an Area Manager (AM).   Serving as the Territory Manager (TM) was Angela Muzzarelli Gowins, who was AM Tran's immediate supervisor.   In summary, Defendants' chain of command was as follows: District Manager (Ms. Rice); Regional Manager (Ms. Schwartz); Area Manager (Ms. Tran); and Territory Manager (Ms. Gowins).

When Mr. Reilly was hired, Mr. Reilly read Defendants' Employee Handbook and signed an Employee Handbook Acknowledgment Form.   Soon after he was hired, he advised DM Rice and Human Resources that he had a bipolar disorder; he advised RM Schwartz of his bipolar disorder in

---

[1]  This factual statement is based on the parties' undisputed facts and Plaintiffs' submitted evidence, which are taken in Plaintiffs' favor.

ORDER - 2

the fall of 2006.[2]  In November or December 2006, Mr. Reilly was promoted to the position of Store Manager at the Walla Walla Cash Store as a result of the good work RM Schwartz recognized that he was doing. However, also about this time, Mr. Reilly stopped taking his prescribed medications.

In January 2007, Mr. Reilly experienced manic behavior.  On Saturday, January 27, 2007, believing that he was being followed, Mr. Reilly threw away his cell phone and other belongings at a rest stop while en route to Portland, Oregon for a weekend.  The police were notified and assisted Mr. Reilly in contacting his sister, whom he lives with in Walla Walla, to pick him up and take him home.  Mr. Reilly's mother arrived in Walla Walla on that Sunday, January 28, 2007; Mr. Reilly's family was able to persuade him to take his bipolar medication that evening.  On Monday morning, January 29, 2007, Mr. Reilly contacted DM Rice by phone and advised her that he was "too sick" to work.  DM Rice first told Mr. Reilly that he would have to work, but after Mr. Reilly repeatedly told her that he was too sick to work, DM

---

[2]  Mr. Reilly was diagnosed with Bipolar 1 Disorder in the spring of 2004 while he was attending college at the University of Portland. He was hospitalized on three occasions following manic behavior over the span of the year.  His treating psychiatrist at the time had difficulty establishing the medication regime because given Mr. Reilly's age his brain was still developing thereby altering the chemical balances.  In the spring of 2006, Mr. Reilly stopped attending college and moved to Walla Walla to live with his sister.  He then began work at the Cash Store in June 2006.

ORDER - 3

Rice advised Mr. Reilly that he needed to work until she was able to get to the store later that morning.

When DM Rice arrived at the store, she required Mr. Reilly to assist her with updating that day's receipts.  At approximately noon, Mr. Reilly's mother also arrived at the store and advised DM Rice that Mr. Reilly was sick because he had experienced a bipolar manic incident. Mrs. Reilly advised DM Rice that it usually takes one to two weeks to determine what medication Mr. Reilly should be taking.  DM Rice advised that Mr. Reilly could not take a week off, but that she would find coverage for Tuesday.  Mrs. Reilly advised that Mr. Reilly was seeing a psychiatrist that afternoon and that she would be in contact with DM Rice Tuesday evening.

After leaving the store, Mrs. Reilly drove Mr. Reilly to Dr. Johnson's office.  Mr. Reilly requested that his mother wait in the waiting room.

Tuesday evening Heather,[3] the Pendleton Cash Store Manager who had covered for Mr. Reilly on Tuesday, called Mrs. Reilly, advising that she got her telephone number from DM Rice and inquiring as to how Mr. Reilly was doing.  Mrs. Reilly understood that Heather was calling on DM Rice's behalf to relay the message that Mr. Reilly was to work on Wednesday. On Wednesday, January 31, 2007, Mr. Reilly went back to work, and his mother returned to her Idaho home.

On Thursday, February 1, 2007, Mrs. Reilly called DM Rice to check on how her son was doing because she was concerned that he needed more

---

[3]  Heather's last name is unknown.

ORDER – 4

time off.  DM Rice advised that Mr. Reilly was doing fine.

On February 2, 2007, Mr. Reilly submitted a deviation/exception report that indicated his store's cash was short $90.00.  The report had a blank space asking for ways to prevent future deviations, in which Mr. Reilly wrote: "pray that the computers don't fuck up again!"  On February 3, 2007, AM Tran learned of Mr. Reilly's obscenity use and told RM Schwartz to determine why this had happened.  RM Schwartz then spoke with DM Rice to address this issue with Mr. Reilly.  DM Rice did so and completed an Improvement Opportunity Form, which advised Mr. Reilly that using obscenities at work was inappropriate.

Yet, after speaking with TM Gowins, AM Tran called RM Schwartz and advised her to terminate Mr. Reilly's employment.  RM Schwartz in turn called DM Rice to advise her to terminate Mr. Reilly's employment and to contact Human Resources for final approval.  DM Rice did so and obtained final approval to terminate Mr. Reilly's employment.  When Mr. Reilly arrived at work on February 13, 2007, DM Rice was present and she advised Mr. Reilly that he was terminated and he could contact Human Resources to learn the reasons for the termination.  Mr. Reilly called Human Resources and was told he was fired for not following policies and procedures.

On March 15, 2007, Mr. Reilly completed an EEOC Intake Questionnaire in which he claimed that Defendants discriminated against him because of his disability when they denied him a reasonable accommodation for his Bipolar I Disorder on January 29, 2007, and then discriminated against him because of his disability and in retaliation for requesting an accommodation when he was fired on February 13, 2007.

ORDER - 5

The termination form prepared by Human Resources soon after Mr. Reilly's termination, but which was not disclosed to Plaintiffs until summer 2010, stated that Mr. Reilly was terminated because he "altered control settings on computer & caused it to breakdown, wrote foul language on reports, verbal discussions/warnings, no improvement; several deviations." Further, it notes that Mr. Reilly is "bipolar - never asked for accommodation; mentioned it in passing."

During the EEOC investigation and this lawsuit, Defendants proffered reasons for terminating Mr. Reilly's employment have varied. On August 1, 2007, Defendants' lawyers told the EEOC in its responsive Position Statement that Mr. Reilly had been terminated because he:

- Had difficulty in performing day-to-day duties without assistance, including being unable to complete standard customer transactions on his own and regularly calling DM Rice to obtain guidance and instruction on how to complete transactions he had been previously trained on and should have done without assistance
- Was unable to complete standard transactions
- Had numerous deviations, meaning the amount of cash at the store was either over or short based on the day's transactions.
- Used profanity on an exception report
- Changed computer settings
- Had customer complaints on transaction length and level of competence
- Had several retraining sessions by DM Rice with Mr. Reilly --- performance did not improve

In a July 18, 2008 letter to the EEOC, Defendants stated that Mr. Reilly's "performance problems" were "caused by him not following the procedures for routine transactions for which he had been fired." In their March 9, 2010 answer to an interrogatory inquiring as to the reasons why Mr. Reilly was fired, Defendants stated that it was because Mr. Reilly failed to "follow [Defendants'] policies and procedures,

ORDER - 6

resulting in poor performance." The details following this broad statement did not reference Mr. Reilly's use of obscene language. In an August 2, 2010-interrogatory answer, Defendants advised that Mr. Reilly was fired because he utilized obscene language on the deviation report.

Another employee was terminated approximately two months after Mr. Reilly's termination. DM Rice, RM Schwartz, and AM Park decided to terminate this employee for failing to follow policies and procedures.

In the fall of 2007, Mr. Reilly went back to college. In May 2010, Mr. Reilly graduated summa cum laude with a physical science degree, with concentrations in geology, environmental science, and mathematics.

**B.    Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that

there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## C.  Authority and Analysis

Defendants seek summary judgment in their favor on Plaintiffs' 1) ADA and Washington Law Against Discrimination (WLAD) failure-to-accommodate and wrongful-termination discrimination claims, 2) federal and state retaliation claims, and 3) breach-of-employment contract claims.[4]

---

[4]  The Court recognizes that the EEOC is pursuing its claims only under federal law, i.e., the ADA, and that Mr. Reilly is pursuing both state and federal claims.  For ease of reference, the Court refers to all claims as "Plaintiffs'" claims.

ORDER - 8

1.   <u>Discrimination Claims[5]</u>

The American with Disabilities Act provides in relevant part:

> [n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (2008).[6]   These statutory requirements require an employee to establish the following elements in order to state a *prima facie* case of disability discrimination: 1) he is disabled, 2) he is able to perform the essential functions of the job with or without reasonable accommodation, and 3) he suffered an adverse employment decision because of his disability. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th Cir. 1996).   In the context of a failure-to-accommodate discrimination claim, this requires the plaintiff to establish that 1) he is a qualified individual with a disability,[7] 2) he

---

[5] Absent the legal principles applying to an employer's duty to accommodate an employee it regards as disabled, the parties agree that the legal principles applied to the ADA and WLAD discrimination claims are similar because the WLAD claim arises during the period after *McClarty v. Totem Electric*, 157 Wn.2d 214 (2006), and before the statutory revision to the WLAD became effective on July 22, 2007.

[6] The Court applies the pre-2009 version of the ADA because the ADA Amendments Act of 2008 are not retroactive. *See EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

[7] This first prong encompasses the first two *prima facie* elements: he is 1) disabled and 2) able to perform the essential functions of the

requested an accommodation for this disability, 3) the employer knew of the requested accommodation, and 4) the employer failed to reasonably accommodate the disability. *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996) (discussing a failure-to-accommodate claim); *Ferguson v. Wal-mart Stores, Inc.*, 115 F. Supp. 2d 1057, 1068 (E.D. Wash. 2000). If the employee establishes a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a specific legitimate, non-discriminatory reason for the employee's termination; the employee can then show that this proffered reason is merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973); *see Tex. Dep't of Comm'y Affairs v. Burdine*, 405 U.S. 248, 252-53 (1981).

Here, Defendants maintain that they are entitled to summary judgment on Plaintiffs' wrongful-termination and failure-to-accommodate discrimination claims because 1) Mr. Reilly is not disabled, 2) there is no evidence that the decision-making managers had knowledge of Mr. Reilly's bipolar disorder or request for accommodation, 3) Mr. Reilly failed to initiate the interactive process, and 4) Mr. Reilly's employment was terminated for legitimate, non-discriminatory reasons. Plaintiffs respond that they presented sufficient evidence to establish triable issues of fact as to the disputed elements.

a.   *Qualified Individual with a Disability*

A "qualified individual with a disability" is an "individual with a disability, who, with or without reasonable accommodation, can perform

position. *Sanders v. Arneson*, 91 F.3d 1351, 1353 (9th Cir. 1996).

ORDER - 10

the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). This encompasses the first two elements of the discrimination *prima facie* case: disability and ability to perform essential functions. *Sanders*, 91 F.3d at 1353.

There is no dispute that Mr. Reilly could perform with or without reasonable accommodation the essential functions of his job. Rather, the focus is on whether Plaintiffs presented sufficient evidence to establish a triable issue of material fact as to whether Mr. Reilly has a disability.

Section 12102(2) defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [the employee]; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiffs rely on each subsection.[8]

i.   Substantially-Limiting Impairment

The first subsection is satisfied if Plaintiffs show that Mr. Reilly has "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). There is no dispute that Mr. Reilly suffers from a mental impairment,

----

[8]   At the hearing, Defendants disputed whether Plaintiffs had sufficiently pled and argued each of these subsections. The Court finds Plaintiffs' allegation that Mr. Reilly was a qualified individual with a disability sufficient to proceed under each of these subsections. Plaintiffs' summary judgment arguments sufficiently applied to each subsection.

ORDER - 11

i.e., Bipolar I Disorder, and that the claimed limited activities of caring for oneself, thinking, concentrating, and interacting with others are major-life activities, *see* 29 C.F.R. § 1630.2(i).  Defendants dispute, however, whether Mr. Reilly was *substantially limited* in these major-life activities *as a result of* his Bipolar I Disorder and the medications taken to treat his bipolar disorder.

"Substantially limits" is defined in the regulations as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Id.* § 1630.2(j)(1).  The regulations set forth the following factors to consider when assessing whether an impairment substantially limits a major life activity:  1) the impairment's nature and severity, 2) the impairment's duration or expected duration, and 3) the permanent or long-term impact, or expected permanent or long term impact, of or resulting from the impairment.  *Id.* § 1630.2(j)(2)(i)-(iii); *see also* EEOC, *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities* (Mar. 25, 1997).  In making this assessment, the Court considers the corrective and mitigating measures taken by the individual to eliminate the effects of an impairment. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-84 (1999).

Mr. Reilly's bipolar disorder is no doubt severe, life long, and, if left untreated, would significantly restrict his ability to care for himself, think, concentrate, and interact with others.  However, the

ORDER - 12

Court finds that, during the initial months at the Cash Store when Mr. Reilly was taking his medication, Mr. Reilly's ability to care for himself, think, concentrate, and interact with others was not substantially limited by either the bipolar disorder or by the medications he was taking to treat the bipolar disorder.  In making this assessment, the Court gives little weight to Mr. Reilly's deposition testimony that he felt "fine" during the build up to his January 2007 manic episode.  An individual with a bipolar disorder, who discontinues critical medication, may not be the most reliable historian.  What is critical to the Court's decision is the lack of evidence submitted by Plaintiffs from other sources, such as Mr. Reilly's sister, parents, or friends, supporting the assertion that Mr. Reilly's ability to care for himself, think, concentrate, and interact with others was substantially limited when he was taking medication during this time period.  The lack of such evidence and the following undisputed facts support the Court's finding that no triable issue of fact exists as to whether Mr. Reilly's bipolar disorder and the medications taken substantially limited his major life activities during the relevant time period: 1) Mr. Reilly performed well at the Cash Store and was promoted in the fall of 2006 when he was taking his medication, and 2) approximately four weeks after resuming medication, albeit a different regime, in January 2007, Mr. Reilly was able to care for himself and soon thereafter began pursuing a college degree, which he ultimately obtained in May 2010, graduating summa cum laude with a physical science degree.  *See Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 423 (E.D.N.Y. 2008) (finding that

ORDER - 13

employee's bipolar disorder and Lyme disease, which restricted her ability to work for six months, was insufficient to meet the substantial limitation requirement); *cf. Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999) (finding that employee presented sufficient evidence to create triable issue of material fact as to whether bipolar disorder substantially limited her ability to think even while receiving treatment given her twenty-five visits to the doctor in one year and continued and monitored medication).

The Court understands that an individual needs time to adjust to the realities of his impairment and may make a decision to discontinue medication or treatment given the frustration with the experienced side effects or an unrealistic view that treatment is not needed.  Yet, the individual's decision to cease medication and stop treating the impairment cannot support a court's finding that the impairment is substantially limiting.  Here, the evidence establishes that Mr. Reilly has not suffered a manic episode since the spring of 2005 other than the January 2007 episode resulting from Mr. Reilly's decision to cease taking medicine.  When the evidence is reviewed in Plaintiffs' favor, Plaintiffs failed to establish that Mr. Reilly satisfies the first disability prong; Defendants' summary judgment motion is **granted in part**.

ii.  Record of Substantially-Limiting Impairment

To have a record of an impairment that substantially limits a major life activity, the employee must have "a history of, or [have] been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Coons v. Sec'y*

*of U.S. Dept. of Treasury*, 383 F.3d 879, 886 (9th Cir. 2004) (quoting 29 C.F.R. § 1630.2(k)); *see also* 42 U.S.C. § 12102(2)(B).  For the same reasons as articulated above in the first subsection, the Court finds that Mr. Reilly does not have a history of, or was misclassified as having, a mental impairment that substantially limited one or more major life activities during the relevant time period.

> iii. "Regarded As" Having Substantially-Limiting Impairment

Plaintiffs also contend that Defendants regarded Mr. Reilly as disabled.  For Plaintiffs' "regarded as" claim to survive summary judgment, Plaintiffs must present sufficient evidence 1) showing that Defendants mistakenly believed that Mr. Reilly had a physical impairment that substantially limited one or more major life activity, or 2) proving that Defendants mistakenly believed that an actual, non-substantially-limiting impairment did substantially limit one or more major life activity.  *See Sutton*, 527 U.S. at 489.  To assess whether "a covered entity entertain[ed] misperceptions about the individual," *id.*, a court looks at the "state of mind of the employer against whom" a claim is made.  *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2000); *see also Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1006 (9th Cir. 2007).  The determination of the employer's motive "'is one rarely susceptible to resolution at the summary judgment stage.'"  *Ross*, 237 F.3d at 706 (internal citation omitted).

When viewing the evidence in Plaintiffs' favor, the Court finds triable issues of material fact exist as to whether the involved individuals believed that Mr. Reilly's bipolar disorder significantly

ORDER - 15

restricted his ability to work, i.e., perform a class of jobs or a broad range of jobs. *See* 29 C.F.R. § 1630.2(j)(3)(I). Mr. Reilly told DM Rice, RM Schwartz, and Human Resources about his bipolar disorder. When he experienced the January 2007 manic episode and requested time off to address his bipolar disorder, DM Rice, and any supervisor that she or Heather shared this information with, may have believed that Mr. Reilly's ability to work was now substantially limited. This is especially so in light of the number of deviation reports that Mr. Reilly prepared in January and early February 2007 and his use of obscene language on the February 2, 2007 deviation report. Accordingly, Defendants' motion is **denied in part**.

> b.    *Adverse Employment Action Because of Disability*

Plaintiffs contend that Defendants adversely affected Mr. Reilly's employment by both failing to accommodate his bipolar disorder and by terminating his employment because of his bipolar disorder. Defendants do not dispute that failing to reasonably accommodate a disability and termination of employment are adverse employment actions; rather, Defendants argue that Plaintiffs cannot establish that any adverse employment action was caused by an individual with knowledge of Mr. Reilly's bipolar disorder. Defendants also highlight that, in the Ninth Circuit, an employee cannot maintain a failure-to-accommodate discrimination claim solely on the basis of a "regarded as" disability.

> i.    Termination

"[T]he ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation—a motivating factor standard." *Dark v. Curry Cnty.*, 451

F.3d 1078, 1085 (9th Cir 2006).   Although Defendants contend that AM Tran and TM Gowins were solely responsible for deciding to terminate Mr. Reilly's employment and that they had no knowledge of Mr. Reilly's bipolar disorder, the Court finds triable issues of material fact exist as to whether the decision to terminate Mr. Reilly's employment was motivated by the belief that Mr. Reilly's bipolar disorder was substantially limiting.   Mr. Reilly had informed DM Rice, RM Schwartz, and Human Resources of his bipolar disorder.   Given that the Human Resources termination form, which was not disclosed during the EEOC investigation, references Mr. Reilly's bipolar disorder and Human Resources had to approve his termination, the Court finds triable questions of fact exist as to whether information about Mr. Reilly's bipolar disorder was relayed to the other supervisors. *See Poland. v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007) ("[T]he biased subordinate's retaliatory motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision.").   This finding is also supported by the facts that 1) Mr. Reilly was terminated about two weeks after requesting time off to address his bipolar condition, 2) management terminated Mr. Reilly for using obscene language on the deviation report after already giving him a warning for the same conduct, and 3) DM Rice, RM Schwartz, and AM Tran were all involved in deciding to terminate another Store Manager approximately two months after Mr. Reilly.   For these reasons, the Court finds Plaintiffs satisfy the last element of the *prima facie* case of wrongful-termination discrimination.   Defendants' motion is

ORDER - 17

**denied in part**.

                ii.   Failure-to-Accommodate Adverse Action

      Plaintiffs do not dispute that the Ninth Circuit has ruled that an employer does not have a duty to reasonably accommodate an employee that it regards as disabled. *See Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003). Therefore, given that the Court determined that Mr. Reilly only potentially satisfies the "regarded as" disabled subsection, Defendants are **granted** summary judgment as to Plaintiffs' ADA failure-to-accommodate claim.

      This Court has previously determined, however, that the Ninth Circuit's *Kaplan* ruling does not apply to a WLAD failure-to-accommodate claim, and the Court abides by this ruling. The Court reaches this ruling because the WLAD affords "protections that are wholly independent of those afforded by the federal Americans with Disabilities Act of 1990." *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 501-02 (2009). A liberal construction of the WLAD results in a conclusion that the WLAD requires an employer to reasonably accommodate an individual it perceives to be disabled. *See Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 55-57 (2006) (ruling that *Kaplan*'s reasoning should not be applied to similarly limit California discrimination laws; *see also Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 773-777 (2004) (disagreeing with *Kaplan*'s reasoning and ruling that the ADA requires an employer to reasonably accommodate an individual it regards as disabled). The Court recognizes that during the *McClarty* period Washington courts found cases analyzing the ADA

ORDER - 18

instructive while construing and applying similar provisions in the WLAD. *See McClarty*, 157 Wn.2d at 228-29. Nonetheless, the Court determines that Washington courts would not have reached the decision that the Ninth Circuit did in *Kaplan*, but rather would have found persuasive the legal analysis set forth in *Williams* and *Gelfo*. Accordingly, Plaintiffs may pursue their WLAD claim that Defendants failed to accommodate Mr. Reilly's perceived substantially-limiting bipolar disorder.

The Court finds triable issues of fact exist as to whether a reasonable request for accommodation was made on Mr. Reilly's behalf. Mr. Reilly himself did not make a request: his statement that he was "too sick" to work was insufficient to place DM Rice on notice that Mr. Reilly was requesting an accommodation for his bipolar disorder. However, when viewing the evidence in Plaintiffs' favor the Court finds triable issues of fact exist as to whether Mr. Reilly's mother requested an accommodation on Mr. Reilly's behalf. His mother advised DM Rice that Mr. Reilly was having a manic episode, he was seeing a psychologist to address the issue, and historically a week was needed to stabilize his medications. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (When requesting an accommodation, the employee is "not required to use any particular language . . . but need only 'inform the employer of the need for an adjustment due to a medical condition.'") (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)). Mrs. Reilly did not follow through on

ORDER - 19

her statement that she would call DM Rice Tuesday evening to provide an update as to her son's mental health; yet, Mrs. Reilly did not do so because she understood that Heather's Tuesday evening phone call was made on DM Rice's behalf. Heather indicated that Mr. Reilly was needed to work the next day, Wednesday. Under these circumstances, the Court finds triable issues of material fact exist as to whether a reasonable request for accommodation was made on Mr. Reilly's behalf.

The Court also finds triable issues of fact exist as to whether Defendants reasonably engaged in the interactive process to determine whether a reasonable accommodation existed for Mr. Reilly's perceived disability. Once an accommodation is requested, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Id.* at 1089. The burden of identifying a potentially reasonable accommodation is not placed solely on the employee; rather, the interactive process is the means by which it is determined whether a reasonable accommodation exists. *Barnett*, 228 F.3d at 1113. Accordingly, the employer has an "affirmative obligation to engage in an interactive process in order to identify, if possible, a reasonable accommodation that would permit . . . [the employee] to retain his employment." *Dark*, 451 F.3d at 1088; *see Taylor*, 184 F.3d at 315 ("The interactive process, as its name implies, requires the employer to take some initiative."). This interactive-process obligation is not exhausted by one effort: it is a continuing duty. *Dark*, 451 F.3d at 1088.

Here, there is no evidence that DM Rice took steps to find coverage

ORDER – 20

for Mr. Reilly beyond Tuesday, even in light of Mrs. Reilly's advisement that Mr. Reilly typically needed at least one week to treat his manic condition. *See Bultemeyer v. Forty Wayne Comm'y Schs.*, 100 F.3d 1281, 1285-87 (7th Cir. 1996) (recognizing that when the employee has a mental illness it is "crucial that the employer be aware of the difficulties," and "help the other party determine what specific accommodations are necessary"). A reasonable fact-finder could determine that Defendants' response to the requested time-off accommodation was unreasonable.

In sum, the Court finds that Plaintiffs presented sufficient evidence to establish a *prima facie* wrongful-termination discrimination claim under the ADA and WLAD, and failure-to-accommodate discrimination claim under the WLAD.

      c.   *Legitimate, Non-Discriminatory Reason and Pretext*

Defendants maintain that they had a legitimate, non-discriminatory reason for terminating Mr. Reilly's employment: Mr. Reilly used offensive language, i.e., "pray that the computers don't fuck up again," in a deviation report, which is a widely-distributed company document. Plaintiffs do not contest that Mr. Reilly wrote this offensive language and that such offensive language in a company document is a legitimate, non-discriminatory reason for termination. Plaintiffs contend, however, that this legitimate, non-discriminatory reason is a mere pretext for Defendants' decision to terminate his employment based on Mr. Reilly's bipolar disorder.

The Court finds triable issues of material fact exist as to whether Defendants' articulated legitimate, non-discriminatory reason was a

ORDER - 21

pretext for discrimination.  First, DM Rice expressed displeasure about having to find coverage for Mr. Reilly for Monday afternoon and Tuesday. Second, as discussed above, the Court finds triable issues of fact exist as to who were the decision makers and what information about Mr. Reilly's bipolar disorder was known by those individuals.  Third, although many of the documents asserting Defendants' reasons for terminating Mr. Reilly's employment are consistent, the legitimacy and non-discriminatory nature of these proffered reasons are questionable because AM Tran and TM Gowin testified that the sole reason for Mr. Reilly's termination was offensive language and Human Resources did not tell Mr. Reilly he was fired for using offensive language.  Fourth, Mr. Reilly's employment was terminated twelve days after his return to work. Fifth, Mr. Reilly's use of the word "fuck" could be found to be conduct perceived to result from his "regarded as" disability.  *See Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1093-94 (9th Cir. 2007) (recognizing that conduct resulting from a disability is considered part of the disability rather than a separate basis for termination).

> d. *Conclusion*

Defendants' summary judgment motion is **granted** (Plaintiffs' ADA failure-to-accommodate discrimination claim is dismissed) **and denied** (Plaintiffs' WLAD failure to-accommodate and wrongful-termination discrimination claims and ADA wrongful-termination discrimination claim survive) **in part**.

> 2.  Retaliation

To prove retaliation, Plaintiffs must establish that 1) Mr. Reilly

ORDER - 22

engaged in a protected activity, 2) Defendants took an adverse employment action, and 3) there is a casual link between the protected activity and the adverse action. *See Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (citing 42 U.S.C. § 12203(b); *Hines v. Todd Pac. Shipyards Corp.*, 127 Wn. App. 356, 374 n.22 (2005) (citing to RCW 49.60.210)). Again the parties agree that 1) termination is an adverse action, and 2) seeking an accommodation for a disability is a protected activity. But the parties disagree whether Plaintiffs can establish a casual link between Mrs. Reilly's accommodation request on her son's behalf and the termination. For the reasons articulated above in relation to the discrimination claims' causation element, the Court similarly finds triable issues of material fact as to whether Defendants terminated Mr. Reilly because his mother requested an accommodation, i.e., time off, on his behalf. DM Rice's negative and dismissive reaction to Mrs. Reilly's request occurred less than two weeks before Mr. Reilly's termination. Accordingly, Defendants' motion for summary judgment on the retaliation claim is **denied**.

   3.   Breach of Contract

   Defendants argue that Plaintiffs cannot maintain a breach-of-contract claim because Mr. Reilly was an at-will employee and therefore could be fired at any time. Plaintiffs respond that the Employee Handbook guaranteed that Mr. Reilly would not be terminated in violation of federal or state anti-discrimination laws.

   Employment contracts that are indefinite as to duration may typically be terminated by either the employer or employee at any time

ORDER – 23

with or without cause. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223 (1984). Yet, absent a conspicuous disclaimer, an employee handbook can contractually modify a terminable at-will relationship if it contains a "promise . . . of specific treatment in specific situations . . . [and] the employee relies thereon." *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 104 (1994); *see Payne v. Sunnyside Comm'y Hosp.*, 78 Wn. App. 34, 43 (1995) ("Such a disclaimer must state in a conspicuous manner that nothing contained in the manual is part of the employment relationship and is simply a general statement of company policy.").

Although Defendants do not dispute that Mr. Reilly read the Employee Handbook, the Court grants summary judgment in Defendants' favor on the breach-of-contract claim because reasonable minds would agree that the Employee Handbook did not specifically promise how a disability-accommodation request would be handled.

The Employee Handbook states:

The Company is an equal opportunity employer that maintains a policy of nondiscrimination with respect to all employees and applicants for employment.  All personnel actions . . . are administered without regard to race, color, sex, religion, natural origin, age, disability, citizenship, or veteran status.
          . . . .

Racial, religious, sexual, sex-related, age-related, ethnic, disability-related, or military service-related slurs, insults, behavior, and/or innuendos are wholly inappropriate and violate the Company's policy.

The Company will not permit, tolerate, or otherwise condone retaliation against any employee.  For purposes of this policy, retaliation means any adverse action or threat of adverse action taken or made because an employee has exercised or attempted to exercise in good faith any rights under federal, state, or municipal employment laws or under the policies of the Company, including by complaining of unlawful

discrimination or harassment.

This language did not promise that an accommodation request would be handled a certain way but rather generally stated that Defendants would comply with state and federal anti-discrimination laws.   Further, the Employee Handbook conspicuously disclaimed any modification to the employee's at-will employment relationship:

> Employees have no contract, assurances, or guarantee of continued employment with the Company.   No verbal communication or written document will provide such a contract, assurance, or guarantee unless specified in writing and signed by a Company official who is authorized to enter into such an agreement.

> MANUAL IS NOT A CONTRACT

> The policies and procedures presented within this manual are for information and illustrative purposes and are in no way to be interpreted or construed as a contract of employment or guarantee of continued employment for any specific period of time.   The work rules contained in the policies and procedures are for illustrative purposes and are not considered to be exclusive.

> The Company reserves the right to unilaterally amend or withdraw any policy or matter set forth in the policies at any time without notice for any reason it deems appropriate.

Because Mr. Reilly's employment was terminable at any time, Defendants' motion is **granted** as it relates to Plaintiffs' breach-of-contract claim.

    4.   Permanent Injunction

Defendants ask the Court to grant summary judgment in their favor on Plaintiffs' request for a permanent injunction.   Mr. Reilly does not contest that he does not have standing to pursue a permanent-injunction request, *see Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (recognizing that former employees lack standing to seek injunctive relief because they "would not stand to benefit from an

ORDER - 25

injunction requiring the anti-discriminatory policies [to cease] at [their] former place of work"). The EEOC, however, wishes to pursue its request and asks the Court to reserve ruling on all equitable relief until it reaches final judgment on the merits. Under the circumstances, the Court finds it appropriate to withhold a decision relating to the EEOC's permanent injunction request until the conclusion of evidence. Defendants' motion is **granted** (Mr. Reilly) **and denied** (EEOC) **in part**.

**D.   Conclusion**

In summary, the Court grants and denies in part Defendants' summary judgment motion. The Court finds triable issues of fact exist as to whether 1) Defendants regarded Mr. Reilly as disabled, 2) Defendants failed to reasonably engage in the interactive process, 3) Defendants' termination decision and alleged failure to accommodate were motivated by Mr. Reilly's bipolar disorder, 4) Defendants' legitimate, non-discriminatory reason for termination was pretextual, 5) Defendants retaliated against Mr. Reilly for his mother's accommodation request on his behalf, and 6) the EEOC is entitled to a permanent injunction. Accordingly, Plaintiffs' ADA and WLAD wrongful-termination discrimination claims, WLAD failure-to-accommodate discrimination claim, and federal and state retaliation claims survive summary judgment. The Court finds summary judgment in Defendants' favor is appropriate as to Plaintiffs' ADA failure-to-accommodate discrimination and breach-of-contract claims and Mr. Reilly's request for a preliminary injunction.

For the reasons given above, **IT IS ORDERED**: Defendants' Motion for Summary Judgment **(ECF No. 82)** is **GRANTED and DENIED IN PART**.

ORDER - 26

1    **IT IS SO ORDERED**.   The District Court Executive is directed to

2  enter this Order and distribute copies to counsel.

3    **DATED** this   _____20th_____   day of December 2010.

4

5                              _____S/ Edward F. Shea_____
                                    EDWARD F. SHEA
6                           UNITED STATES DISTRICT JUDGE

7
   Q:\Civil\2009\5073.msj.wpd
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   ORDER - 27